Well, thank you, Your Honors. May it please the Court, my name is Laila Loosery and I represent the appellant, Tracy Penland, in this matter. As an initial matter, Your Honors, I know that you asked us to review the Techman case, and since this is a de novo case, I would agree with the Court that the factual findings of the Court should be reviewed for clear error in the legal conclusions de novo. I think in looking at the District Court's order here, there are several clear factual errors. The most glaring one from the appellant's perspective is that... I'm sorry, before you get into the record, I just wanted to ask a Techman question. I mean, I think that's right, that under Techman, obviously, we, you know, the standard of review is clarified, and we now know that we're reviewing these fact findings de novo. But I have a concern, and we said this in Techman, that the District Court wouldn't have known that when it was making these findings. And, you know, we explained in Techman that if a District Court thinks everything it does is going to be redone on appeal anyway, there's sort of an incentive question here. Like, District Courts may not take their customary, very careful care with fact findings if they think we're just going to redo everything ourselves anyway. So I have, I think, coming in now and saying, okay, okay, we'll take these fact findings and we'll review them only for clear error creates a possible problem. And I'm wondering why we shouldn't just send this case back to the District Court in light of Techman and let the District Court have a bench trial, make formal fact findings, and do that with the awareness that they will be reviewed only under this very deferential clear error standard. I think that's certainly within this Court's jurisdiction and prerogative to do so, Your Honor. In this case, I think even if that were the case, the District Court here made such clear, incorrect factual findings, mainly from interpretation of the policy term perspective. Mr. Penland has never asserted that he is only disabled due to the conditions that are limited to 24 months in the policy. Particularly in this case, the neuromusculoskeletal limitation. He has only ever made the conclusion or made the assertion to MetLife that he is disabled because of a combination of his medical conditions. And that really is the heart of this case, Your Honors. While certainly we believe that he is disabled solely from his non-limited conditions, the problem here is MetLife does not have the discretionary authority to interpret the terms of the plan. This is a pure de novo review. So as this Court knows, the requirement is that you look at the plan terms as they are written. The plan term says, if you are disabled due to one or more of the following, we will limit your benefits to 24 months under the policy. The plain meaning of the word due to is caused by or as a result of, pursuant to Merriam-Webster. Whereas contrasting that, the definition of contribute to is give or supply as a part or share. Mr. Penland, again, has never asserted to MetLife or to this Court or to the District Court that his disability is purely musculoskeletal and therefore limited to 24 months under the policy. His entire claim arose because he was on a work trip to Mexico in 2014 and unfortunately developed E. coli. When that happened, everything else followed suit. And even if the term due to, if this Court finds that to be ambiguous, then the ambiguity has to be construed in favor of coverage. In both the District Court briefs and this Court's brief, I cited two cases that came out of the Fourth Circuit. One is Cothran v. Reliance Standard, which is an unpublished case. But the other one was at the South Carolina District Court, and it's Alexander v. United American, excuse me, Your Honors. In that case, both of those cases, the courts were addressing the same issue. If a disability under a de novo standard of review says due to, does that mean the sole cause of or contributed to by? And in both of those cases, the Court found that if there is a combination of limited and non-limited conditions, then the plan exclusion does not apply. Counsel, I didn't understand your argument on this, and I want to give you a chance to clarify it for me. The Court in those cases, they weren't saying, it wasn't like there were a bunch of conditions. Some were limited, some were unlimited, and the question is, do you combine them? It was that there was a particular condition, migraines, and that one condition was contributed to both by limited and non-limited. It was sort of partially limited and partially unlimited, and the plan excluded it because of the part that was limited. But here, the plan did consider every asserted condition, every asserted non-limiting condition. It didn't exclude them. It considered them, and it just decided that they weren't disabling. So it just seems like this is a very different posture, but maybe I'm misunderstanding something, and I want to make sure I'm clear on this. Yes, Your Honor. The issue, particularly in the Alexander case, was she originally went out of work because of physical conditions. During the entire claim process, whenever they needed an attending physician statement completed, it was completed by her psychiatrist. So then, they originally approved her based on her physical conditions. Then they flip-flopped and said, no, no, since you've been submitting all these attending physician statements from your psychiatrist, it's mental 24 months. And in that case... Because your physical conditions have like a mental component? I think they were separate, Your Honor. Basically, the way I interpreted Alexander is you cannot parse them out. For instance, most ERISA cases and most plan documents say, if your disability is caused or contributed to by the following conditions, we will limit your benefits to 24 months. That is not what this policy says. It says if you are disabled due to these conditions, and it does go ahead and parse out what neuromuscular skeletal conditions mean. The problem with this particular review is MetLife has always said you must be disabled solely from non-limited conditions. And that is not what the plan document says. But at worst, the plan document, again, is ambiguous on the subject, meaning you construe it in favor of coverage. And in Alexander, the court said you cannot parse out the two conditions if the conditions exist together. And if I may, it seems that the Cochran Court examined whether the limitation would apply when there was a combination of physical and psychiatric issues. And the court found that the limitation would not apply. And additionally, in preparing for this argument today, I did a little bit of research outside of the Fourth Circuit to see if any other courts had addressed this issue. And there's a particular case out of Arizona that I discovered, and I'm happy to provide the court with copies. It was a DeNovo review. And in that case, the plaintiff suffered from cardiac conditions as well as mental health. That's the case you cited in your brief. I did not, Your Honor, because it was outside of the Fourth Circuit. Then maybe you will send us something later on. Yes, Your Honor, I'm happy to do a filing. Something like that. Yes, Your Honor. You'll have to go find the case. The other side had to find it. We won't do that. No, I'm happy to file something. I do have copies with me today as well. Let's move to the next point. Okay. What happened then is another factual error on the district court is that they credit, the district court credited MetLife's reviewing physicians over plaintiff's treating providers. And the problem with that, Dr. Lewis, who was the internal medicine doctor, he opined relating to internal medicine conditions and said, I do not have the expertise to opine to anything else. Then they had him reviewed by an orthopedic doctor, and he said, this is my decision on the orthopedic problems. I can't discuss anything else. Then they had it reviewed by a doctor, and I may butcher this, so I apologize, Petruska, who purportedly considered all of the conditions together. But the problem with that opinion is MetLife did not provide Dr. Petruska any of these submissions that plaintiffs submitted on appeal, which included additional medical records from the gastroenterology doctor beyond what he had been provided, Nurse Cox's statement attesting to his disability. It doesn't appear as if he was provided with either of the opinions from Dr. Cox, stating that because of the totality of his medical conditions, he was completely and totally disabled. So I would submit, Your Honors, even under the more stringent abuse of discretion standard, MetLife's review cannot be said to be reasoned and principled. Another issue with the district court's opinion is that they say, the district court says that Dr. Petruska considered all of the conditions cumulatively, but a few pages before that, in the findings and fact, he says they had him reviewed by Dr. Petruska, and he found that Mr. Penland was not disabled solely from his non-limited conditions. So there's some discrepancy in the district court's opinion, and it's our assertion that requiring Penland to be disabled solely from non-limited conditions is not what the policy requires. There's nothing in the policy that says that the limited conditions cannot contribute to the overall picture of disability. Certainly, MetLife is the one that drafts these documents, so if they meant for it to say caused or contributed to by, then it certainly could have been added into the policy, but it wasn't. And again, Your Honors, nothing in the record states that Penland ever asserted that he was only disabled because of limited conditions. And I think the claim process that MetLife went through here lends to that because the policy says that if you are subject to this limited condition, you can only get 24 months maximum of benefits. MetLife paid Mr. Penland for almost five years, and what happened was when he originally filed his claim, they said, oh, we think you're disabled because of neuromusculoskeletal disorders two years. We didn't have an opportunity to appeal that decision because it didn't offer the opportunity to appeal, and as Your Honors know, we can't come before the court until we've exhausted administrative remedies. So then they reviewed the claim again in September of 2017, and a claim note says, oh, it appears as if he's having difficulties because of irritable bowel syndrome and drug-induced constipation. Let's pause the 24-month limitation period, and now we're going to approve him based on his internal medicine conditions. Fast forward to December of 2018, they changed their mind again. They say, oh, we don't think you're disabled because of these conditions anymore. Now we're going to pay you because of your osteoarthritis of the hip. We're going to pay you two more years. I think that is indicative of kind of hiding the ball that MetLife has done during this entire claim. They keep, again, keep saying you must be disabled solely due to non-limiting conditions, but that's an impermissible reading of the plan. They're attempting to read terms into the plan that simply don't exist, and for those reasons, Your Honor, we would ask that at best a remand. Of course, we would always like an award of benefits. However, if the court finds that remand is more appropriate, we are certainly amenable to that as well. Thank you, Ms. Losery. We will hear from Mr. Quattlebaum. Thank you. May it please the Court. Derek Quattlebaum on behalf of Metropolitan Life Insurance Company, and I'd like to first address your question about because the lower court didn't know or didn't address or didn't identify the standard of a clear error is the proper thing to send it back. I would submit for a number of reasons the answer to that is no. First, I would draw the court's attention to the lower court's specialized case management order, which have been in place for, I think, about two decades or longer, very detailed, specific with the risk of cases. It's in the record starting at page 13 of the record, and the court sets forth the opportunity for the parties to address the proceedings that will be followed as the court addresses the claims asserted by the plaintiff. In that, there are two sections that I would bring particular note to, and one is section four of the actual order where it says, and I think this goes to the Timken case, we're going to dispense with summary judgment. We're not going to do that because, effectively, it's a waste of time in these cases, and so what we're going to do is, unless the parties object, we're going to address this on a joint stipulation. Now, that joint stipulation is actually attached to the order, but before we get to that, within the order, we have specialized interrogatories, and the court says, does anybody object to a non-jury trial? And while it may not be called that in the order, what the court has is a non-jury trial conducted on the submissions of the party because, as this court is well aware, they're limited to the administrative record unless the court determines on a de novo review that the court wants to receive more information. The court here did not see the need to obtain more information, and we know why, because this case actually, I think, is the largest administrative record I have ever encountered. It's almost 6,000 pages. This court, fortunately for you all, and I think this is, again, to the point of Timken, the joint record submitted here is about 1,500 pages, so you did not have to go through the other 4,500 pages of documents. To my final point, and I think to your point, it is extremely clear from the court's order that the court painstakingly went through the 5,000 to 6,000 pages and on its own de novo reviewed the claim and came to its independent conclusions about... Can I just ask you, I want to go back to the case management order, which I did look at. So is your point with respect to the case management order that it is clear from that two things, that the district court understood itself to be conducting a bench trial and understood that the standard of review coming out of that bench trial would be that we would review factual findings only for clear error? Well, I would submit to the court that, yes, the court knew it was conducting a bench trial. And, in fact, I think that's addressed in the record at page 17 where item 4 is non-jury trial. And if anybody objects to this process and thinks they're entitled to a jury trial, then now is the time for you to state that objection. The parties do not file, but they exchange responses to those interrogatories. And I don't have it with me, but I would submit to you and she can clarify that. So my concern is that at the time that this was all happening, it was very unclear in these kind of hybrid proceedings, the stipulated record, the judge-making fact findings, what that exactly was and, most important, how it would be reviewed on appeal. And in the Temkin case, one of the arguments that we addressed was that even if it's a bench trial, you still should be reviewing it de novo, that even you should be reviewing factual findings out of a bench trial de novo. So I remain concerned that there was nothing, I didn't see anything in the case management order that reassured me that this district court would have been in any, I'm not faulting the district court, would have been in any position pre-Temkin to know how this matter would be reviewed on appeal. And with all due respect, I think it's the lower court's responsibility to make sure the lower court is reviewing the case on the standard of review that it is obligated to review. I don't know that the lower court, I don't know how to put this without, should be concerned with, and I think Temkin speaks to that, the lower court can't create its own rules, it can't create special standards of review, and I think what Temkin says is when it reaches here, and this is what happened in this case, we, the litigants, said it's de novo, we were wrong, and it's correct for you to say we have a record, we have an order, and this court, the Fourth Circuit, must review it for clear error. And I think that's here, and so for all of those reasons, because it's clear from this order that Judge Hurlong did a de novo review that was thorough, substantial, and comprehensive. He considered the objective evidence, the subjective evidence, and it can't be said at any level, whether you're talking about MetLife's review, the review of the IPCs for MetLife, or the lower court, they were all substantial, comprehensive, and so I think today with this order and this record, this court's, on the standard that is properly the standard for this case, according to Temkin and Byram, is, is there clear error? And as stated in those cases, and I think I found a, well, it's another case that wasn't cited in our briefs that goes into great detail about how even if you had the 6,000 pages, and if you might have decided the case differently, as long as there's not clear error on the part of the lower court, you can't find differently as regards to the facts of this case. So I'll move on unless you have any other questions about the clear error. Other than the question of isn't there some similarity between what happened here and what we rejected in Temkin of the quasi-summary judgment proceeding? I don't think so, because there, there was no quasi-anything. The judge, in fact, in his order said, I'm not creating any special proceeding other than the parties acknowledge that it's a waste of judicial resources to bother with summary judgment because it's on the administrative record, and it's going to be briefed. So let's get to what is the non-jury trial, which is a trial on the briefs, which a trial at that level does not need to have witnesses called, and in fact, this court, the Supreme Court has held that unless there are other factors, the lower court, the trial court should not be looking at anything other than what the claims administrator, MetLife in this case, was looking at. So the court was bound and had to look at only those 5,000 to 6,000 pages to make its de novo decision in this case. I think that's very important in light of the arguments that are being presented by the appellant in this case because they continue to address the errors that they claim MetLife made, and I would submit, number one, MetLife didn't make any errors, but we are now looking not at what MetLife did, we're looking at what the trial court did in its analysis of the appellant's claim, and they present primarily two arguments. One is the legal argument based on Coughran and Alexander, and what they're trying to do, I would assert to this court, is that they're trying to get this court to rewrite the plan, and the plan is the crux of any ERISA benefit. The plan controls. The plan here is not ambiguous. The lower court found that it was not ambiguous. It is common, and I would say the vast majority of plans for disability benefits, and this court has addressed it time and time again, they have limited condition provisions in them that relate to neuromuscular and to mental and nerves, and those in this particular case are limited to two years. Those plans, unlike Coughran, are very precise in their definition of those. The problem in Coughran that the court found, which was our same district court judge, was that in the Coughran case, all it said was it's limited for, quote, mental and nerves, but it didn't go on to define it. The court said it's not defined, and therefore I find that provision to be ambiguous. But more importantly, the court there, as upheld by this court on appeal, and it wasn't cited in the appellant's brief, but on appeal, this court found that the record showed that it abundantly demonstrated that Coughran's disabling physical conditions were present supporting Coughran's claims. In our case, the very court that wrote Coughran addressed Coughran and said to the appellant, you misunderstood Coughran, and went into detail explaining how that case is different from our case. Likewise, the Alexander case that they rely upon was not, again, they want to rewrite the contract, and I would submit that it's improper for this court to rewrite the contract because it's very clear. But in the Alexander case, what the court held was, the claim was initially approved on physical conditions. Then, as further support, the claimant submitted an attending physician statement from a psychiatrist. And so they said, okay, you also are disabled because of mental and nervous. The court found in the record showed in Alexander that at that point, the claim administrator just ignored all physical evidence after that and did a focus on mental and nervous with an eye towards ending it with 24 months. There were records, attending physician statements, submitted to the claim administrator there, and the claim administrator did not look or even consider at all the physical conditions in the Alexander case. And that was the basis there for the court overturning that decision. The court did not say, if you've got a limited condition and a non-limited condition at the same time, then we're not going to allow you to throw out the limiting condition. To accept that theory would lead to absurd conclusions where, for example, if somebody, that their disabling condition was neuromuscular, limited to 24 months, but they happen to have high blood pressure, for example, another condition, but there was no limitation or restriction because of that, then they win the lottery because they get to combine that and move on for as long as the neuromuscular and just read out of the plan the very... So what we have here, you've got an individual who has 25 conditions, and for at least two years, I take it it's the limiting conditions that gives a basis for relief for them. They are able to recover disability for a period of two years. That's extended for another two years. Beyond that, when they, I guess, consider again the limiting conditions, then you've got these non-limiting conditions. So is the issue here whether the non-limiting conditions alone would lead to a 60% rating of disability? Yes. So the question... So when we look at that and we look at the three, because the district court relied heavily on the three experts by MetLife, and each one of them seems to be, except for the last one, Trusky is his name, seems to have been more than a total... looked at the circumstances more wholly. So the internist initially could only look at what he knew about in terms of the limiting conditions, and each one of them kind of came to different conclusions, ranging from some restrictions to work to you can't work at all or you can do anything. So how is that resolved, this internal conflict of even the experts for the MetLife? How is that resolved by the district court? It's resolved because what the appellant wanted the court to do there and wants the court to do here is not look at the critical period, which was January 11, 2021, and forward. They say... That's the period we're talking about in which the non-limited conditions alone must be able to use to determine the 60%. That's right. And so leading up to that period... But which of the experts went there? When you look at them individually, you have Lewis, you have the other doctor, then you have Trusky, and it seems like each one of them, when you look at what they've done and what their expertise is, they, at least the first two, gives you sort of part of it, and then the final one, Trusky, uses what they have. And the determination on at least by one of them is, well, there's no restrictions. And then there's one that says there are restrictions. And how is that resolved by the district court? Now, this is just the MetLife folks, and he finds them, as I understand it, to be more reliable than the ones who, from the plaintiff's side, there's a plaintiff on this, and there's no treated physician rule. I'll go ahead and throw that out so we don't have to spend time talking about that. We all understand that. But how is that resolved by the district court? Well, the district court resolves that because taking the three as a whole, the district court talks about how they were so thorough, substantial, and comprehensive in their reviews. And if you look at all three of those together, what you come away with is that the only thing by January 11, 2021, that could possibly be a disability as defined by the plan would be the neuromuscular condition. But doesn't Ms. Lazary argue that they, you said they look at it, do a full review, but I think the argument was earlier that MetLife had not even given them the full medical record or history of Mr. Pentland. Well, I just completely disagree with that. And I think a reading, you know, this, again, now we're looking at the district court who, I would argue, it doesn't matter what MetLife did, the district court did a de novo review and had the 5,000 to 6,000 pages of documents, and it looked at the medical records. It looked at the independent physicians' consultants' reports. It looked at what the treating physicians provided. And I think that's an important point in this case, because the treating physicians at no point during the period and the year and a half to two years leading up to that provide any opinions about disability, zero. Their records are there, but they give no opinion. The only opinion is from a nurse practitioner. So her opinion doesn't. And her opinion was that he can't work, is that correct? Her opinion was he's got these conditions and he can't work. And I would submit she's got to do more, even if she's qualified to give an opinion, and I think that's an important thing here, but she just says he's got these conditions and he can't work. She doesn't say here are the restrictions that he has that prevent him from earning 60% of his income. She just goes from A to B without the required explanation and opinion about here is how he is restricted in his activities and therefore can't meet the definition or meets the definition because he can't earn more than 60%. I think the takeaway from the independent physicians that MetLife relied upon and that the lower court relied upon was that based on their comprehensive reviews, when you take out the 24-month limited conditions, he has no restrictions that these conditions, and they went point by point by point, and Dr. Petruska does say taking them individually and as a whole, he's not disabled. I see my time's up and I'm way over on alcohol. Thank you, Mr. Glover. Ms. Loosery, you have a few minutes. Just very quickly, Your Honors. A few things I wanted to touch on. The Alexander case, opposing counsel stated that they didn't consider her physical conditions at all, and that's incorrect. They reviewed her. As noted in DICTA in the case, they reviewed her, said you're solely disabled because of mental problems. Your physical problems don't keep you from working. Therefore, we're not going to pay you any benefits. So it is the same situation that we have here. And again, in that case, the court found due to does not mean caused or contributed to by. There is nothing that says that her mental conditions cannot contribute to her overall picture of disability, which is exactly what we have here. To Nurse Cox's, and I would assert to the court that there's only one medical provider in the record that has consistently opined that Mr. Penland is disabled, and that is Nurse Cox. She is an advanced practice registered nurse, and she did speak to his subject of complaints and limitations in the statement that we submitted on appeal, which again was never provided to Dr. Petruska. And I know that because in his opinion, he lists four pages of the documents that he considered, and none of plaintiff's submissions are inserted therein. The opinions that he reviewed from Dr. Vera only went to September of 2020. I submitted information on Mr. Penland's behalf with medical records moving into 2021. If he had reviewed them, they would be listed. Nurse Cox's opinion, another factual error by the district court, Nurse Cox's opinion that I submitted on appeal was discounted because the district court said that she did not have the benefit of seeing the 24-month limitation. That's not dispositive to her opinion that I submitted on appeal because she opined that solely due to the non-limited conditions, he was completely and totally disabled and cannot work. There's an attending physician statement from 2020 that was submitted, again that doesn't appear to be something that Dr. Petruska considered. And it was submitted, and it's a little confusing, but it was submitted by Dr. Vera with Nurse Cox confirming that listed his gastrointestinal problems and how he could not work. So I would respectfully submit to the court that the only opinions that carry any weight as far as the determination of disability is the ones that Mr. Penland submitted. MetLife's opinion, especially the most recent one, is flawed. And even under an abusive discretion standard, that would be indication of an unreasonable claims process. And then with regards to the bench trial issues, as Mr. Quattlebaum stated, in South Carolina we do have a special procedure for handling ERISA cases. We do, for all intents and purposes, file our briefs pursuant to Rule 52. Of course we are available to hear for the judge to call us in for oral arguments if they choose, but most of the time they just review it on the administrative record and then issue their decisions. So again, we believe even under the strategy or the standards set forth in Techman, there are so many clear factual errors in the district court's findings of fact in this case that it would necessarily lead to the legal conclusions being incorrect, which we think at worst should warrant a remand to MetLife for consideration, again, of all the conditions together based on the terms of the policy. The terms of the policy, we are not trying to read anything into the policy, but on the same point, MetLife can't require something that is simply not required by the policy. And again, in conclusion, Your Honor, there is nothing in the policy, the plain language or the ambiguity or however you look at it, that says that he cannot be completely and totally disabled because of a combination of all of his medical conditions together. Thank you, Your Honors. Thank you, Mr. Loosery. Thank you, Mr. Quattlebaum. Court will adjourn until tomorrow morning. Then we'll come down and greet counsel as is our condition and be back in court tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: James Andrew Wynn, Pamela A. Harris, DeAndrea Gist Benjamin